[No. B064159. Second Dist., Div. Two. May 13, 1992.]

ROSEMARY CUADROS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BUDGET RENT-A-CAR SYSTEMS, INC., et al., Real Parties in Interest.

**COUNSEL**

William D. Klibanow for Petitioner.

No appearance for Respondent.

Maloney & Mullen and Charles A. Gruber for Real Parties in Interest.

**OPINION**

**NOTT, J.**—Petitioner seeks a writ of mandate following the superior court's denial of her motion to amend her personal injury complaint.

Petitioner alleges damages caused when she was rear-ended by the driver of a vehicle rented from a Budget Rent-A-Car franchise located at 2422 Wilshire Boulevard, Santa Monica, California. Immediately following the accident, petitioner's counsel directed correspondence to "Budget Rent-A-Car" at that address. He wrote, "My investigation has revealed that your company owned the vehicle . . . which rear-ended my client."

"Budget Rent a Car of Brentwood" (Budget Brentwood), 444 West C Street, San Diego, responded, "this office does handle all matters pertaining to automobile accidents on behalf of Budget Brentwood." Petitioner's counsel was asked to forward three estimates of any property damage loss and to advise Budget Brentwood of the nature and extent of any bodily injuries suffered.

In February 1988, Budget Brentwood forwarded a check in the amount of $278 in full payment of petitioner's claim for property damage. The check, drawn on a "disbursement account," was issued by an entity designated as "Budget Rent-A-Car," located at 2300 Wilshire Boulevard, Santa Monica, California.

On May 13, 1988, petitioner's counsel directed a letter to "Budget Rent A Car," 444 West C Street, San Diego, advising that since petitioner had completed her treatment, the bodily injury portion of the claim was ready for settlement.

On May 26, 1988, Budget Brentwood responded by advising that "Budget Rent A Car is prepared to offer your client . . . the sum of [$6,100] in full satisfaction of her claim." Petitioner's counsel was urged to convey the settlement offer to his client, and to advise her that she could "expect a delay of approximately 14 to 20 days for receipt of the settlement check as that check will be issued at Budget's corporate offices in Fort Lauderdale."

On June 21, 1988, petitioner filed a civil action naming as defendants Budget Rent-A-Car Systems, Inc. and the driver of the rented vehicle. In November 1988, Budget, Inc., alleging it had been erroneously sued as Budget Rent-A-Car Systems, Inc., filed an answer to the complaint.

In September 1988, petitioner's counsel contacted an attorney employed by Budget Rent-A-Car in Chicago who allegedly advised that the rented vehicle was owned by K. H. Group, doing business as Budget Rent A Car of Santa Monica. Petitioner then designated K. H. Group, doing business as Budget Rent A Car of Santa Monica (Budget Santa Monica) as a Doe defendant, and served it with process at 2422 Wilshire Boulevard, Santa

Monica. On November 18, 1988, Budget Santa Monica answered the complaint.[1]

On June 22, 1990, petitioner, Budget Santa Monica and Budget, Inc. participated in an arbitration. Although an award was issued in favor of petitioner, she requested a trial de novo. Sometime after the award was entered, defendants' attorneys, the law firm of Smylie & Selman[2] moved to be relieved as counsel for defendants. In setting forth the facts of the case in support of its motion, Smylie & Selman stated that the vehicle had been rented from "Budget Rent a Car of Brentwood . . . at its Westwood location."

Sometime in early January 1991, Attorney Jack M. Panagiotis assumed the defense of Budget, Inc. and Budget Santa Monica. On January 25, 1991, petitioner and the named defendants stipulated to binding arbitration and to the dismissal of the Doe defendants. Panagiotis is listed on the stipulation form as defendants' attorney.

On April 5, 1991, Panagiotis, identifying himself as the attorney for "Defendant Budget Rent-A-Car," noticed defendants' intent to submit, during the arbitration, "[d]ocuments regarding the ownership of the [d]efendant's vehicle."

Binding arbitration was held on July 17, 1991, at which time the defendants revealed for the first time that the vehicle involved in the collision was owned by Budget Rent-A-Car of Westwood (Budget Westwood). The arbitrator then entered judgment in favor of Budget, Inc. and Budget Santa Monica, prompting petitioner to move to vacate the arbitration award.

At the same time petitioner filed a motion pursuant to Code of Civil Procedure section 473[3] seeking to amend the complaint to name Budget Westwood as a defendant on the ground that she had mistakenly named Budget, Inc. and Budget Santa Monica, instead of Budget Westwood. Defendants opposed the motion arguing that petitioner was seeking not merely to correct a misnomer as to a defendant, but to bring in an entirely new party after the statute of limitations had run.

The superior court granted the motion to vacate the judgment, but denied the motion to amend, on the ground that the statute of limitations barred

---

[1]Although never designated as a defendant, on June 19, 1991, Budget Brentwood filed a substitution of attorney form with the superior court.

[2]The motion to be relieved as counsel was filed by Selman, Breitman & Burgess, the predecessor to Smylie & Selman.

[3]Code of Civil Procedure 473 permits a plaintiff to amend a complaint by "adding or striking out the name of any party, or by correcting a mistake in the name of a party, or a mistake in any other respect."

petitioner's claim. In so doing, the court rejected petitioner's argument that the doctrine of equitable estoppel should be applied, apparently on the basis that defendants owed no duty to petitioner to disclose any information concerning the true identity of the owner of the rented vehicle.[4] This petition followed.

Petitioner, again focusing on the doctrine of equitable estoppel, contends the trial court erred in denying her motion to amend. Defendants, on the other hand, argue that the doctrine should not apply here because they did nothing affirmatively to mislead the petitioner in any way concerning the proper parties to this lawsuit.

The doctrine of equitable estoppel affirms that a defendant may not by his statements or conduct lull the plaintiff into a false sense of security resulting in inaction. (See *Mayberry v. Coca Cola Bottling Co.* (1966) 244 Cal.App.2d 350, 352-355 [53 Cal.Rptr. 317]; *Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431, 437-439 [96 Cal.Rptr. 571, 487 P.2d 1211]; *Brookview Condominium Owners' Assn.* v. *Heltzer Enterprises-Brookview* (1990) 218 Cal.App.3d 502, 511 [267 Cal.Rptr. 76].) The determination of whether a defendant's conduct is sufficient to invoke the doctrine is a factual question entrusted to the trial court's discretion. (*Brookview Condominium Owners' Assn.* v. *Heltzer Enterprises-Brookview, supra,* 218 Cal.App.3d at p. 510.) The issue is whether, viewing the evidence and all the inferences therefrom in the light most favorable to the defendants, there was substantial evidence upon which the court could reasonably have found as it did. (*Id.* at p. 511.)

This case is similar to *Mayberry v. Coca Cola Bottling Co., supra,* 244 Cal.App.2d 350. There, the plaintiff alleged damages caused by drinking a bottle of contaminated Coca-Cola. The plaintiff named as a defendant the Coca Cola Bottling Company of Sacramento, Ltd., a corporation which had not bottled the product, instead of the Coca Cola Bottling Company of Sacramento, a partnership which had. The three persons composing the partnership were also officers or directors of the corporation. After the

---

[4]The trial court accepted as true petitioner's counsel's representations that defendant's employees had supplied him with erroneous information concerning the issue of ownership, and rejected defense counsel's argument that it was not reasonable for petitioner's counsel to have relied upon such representations. The court stated that petitioner's counsel "thought he was dealing with honest people." The court then summed up the case in this fashion. "You have a situation in which the lawyer winds up being misled because he's too lazy to check anything out just to be on the safe side, and as a result, three and a half years down the line, he finds out he's got the wrong parties, and he comes into court and says the law is that I can go ahead, even though this accident happened almost four and a half years [ago]. I don't regard that as being the law in the circumstance here. It's unfortunate, but that's the way things come down."

statute of limitations had run and the case went to trial, the plaintiff discovered his error. He moved to substitute the partnership for the corporation as defendant. The motion was granted, and the case dropped from the trial calendar for future setting. The partnership then appeared by new counsel and filed a demurrer which set up the bar of the statute of limitations. The demurrer was sustained without leave to amend. A judgment of dismissal followed, and the plaintiff appealed.

On appeal, the court allowed the plaintiff to correct his error based on a finding that he had committed an excusable mistake attributable to dual entities with strikingly similar business names, and because the named defendant's conduct had perpetuated the error "beyond the point of repair." (*Mayberry* v. *Coca Cola Bottling Co.*, *supra*, 244 Cal.App.2d at pp. 353-354.) The court noted, "A defendant with a shatter-proof alibi had no need to file an answer alleging contributory negligence, no need to take the plaintiff's deposition. The [named defendant's] third step, omission of the identity issue from its pretrial statement, indirectly resulted in dismissal of Black and White Company, a fictitious defendant. Had that dismissal not occurred, plaintiff might have attempted to bring in the correctly named defendant by amendment of the complaint." (*Ibid.*) The court reasoned that the real tortfeasor would not be prejudiced in having to defend the lawsuit since it had long had knowledge of the action.

Here, as in *Mayberry*, the named defendants and the defendant which should have been named have strikingly similar names. And each, regardless of its official title, refers to itself as either "Budget," or "Budget Rent-A-Car," or both.[5] Further, the evidence reveals that Kurt L. Hiete was the owner and/or an officer of Budget Westwood, Budget Brentwood, and Budget Santa Monica, that each of these entities used the address of 2422 Wilshire Boulevard, Santa Monica, and that each was involved in the car rental business.

Jack M. Panagiotis declared in opposition to petitioner's motion to amend that at the time he took over the case he had a discussion with Kurt L. Hiete regarding the representation of Budget, Inc. and Budget Santa Monica. Because Panagiotis was unfamiliar with real parties' franchise arrangements, he "immediately set about determining who was the true owner of the

[5]It is undisputed that the "Budgets" involved in this litigation are in some manner interrelated. For example, Budget Westwood, the owner of the vehicle, is located at 2422 Wilshire Boulevard, Los Angeles. Pebrook, Inc., the entity owning Budget Westwood, is also located at that address, as is Budget Santa Monica. The principal officer of Pebrook, Kurt Hiete, is the president of Budget Brentwood. The settlement check issued by "Budget Rent-A-Car" noted an address of 2300 Wilshire Boulevard, the same address noted for Budget Brentwood on a substitution of attorney form filed in June, 1991, and signed by Kurt L. Hiete.

vehicle." Upon interviewing Hiete and reviewing the file, he determined that Budget Westwood owned the rented vehicle. Panagiotis is careful, however, not to reveal the exact date he became aware that the named defendants were not the owners of the vehicle. As early as January 25, 1991, he assisted the defendants in stipulating to the dismissal of the Doe defendants. It follows, therefore, that he began his review of the file and his discussions with Hiete sometime before that date.

Rather than contact petitioner's counsel and advise him that the named defendants did not own the vehicle, Panagiotis remained silent until after the Doe defendants were dismissed. Finally, in April 1991, just three months before the case was to be arbitrated, he filed a notice announcing his intention to introduce evidence concerning ownership of the vehicle at the arbitration hearing.[6] This act, he argues, distinguishes this case from *Mayberry*. In our opinion, Panagiotis did too little too late. Although the notice may have suggested to petitioner's counsel that the identity issue would be raised at the arbitration, it did nothing to erase the misconception under which petitioner's counsel had been laboring for over three years, i.e., that the defendants who answered the complaint, engaged in settlement negotiations, settled a portion of the claim, diligently pursued discovery,[7] participated in an arbitration, and stipulated to the dismissal of Doe defendants and to binding arbitration possessed an ownership interest in the vehicle.

While we do not impose upon defendants an affirmative duty to disclose to petitioner her error, defense counsel is prohibited from taking willful action to mask that error from petitioner. For over three years defendants conducted themselves as though they were properly named as defendants. In 1991, defendants' current counsel, Panagiotis, after recognizing that an answer had been filed on behalf of the wrong defendants, used that answer as a shield to protect Budget Westwood. He stipulated to the dismissal of the Doe defendants, and on the eve of arbitration issued a vaguely worded notice announcing his intent to raise the identity issue.

While it is true that petitioner's counsel could have propounded discovery and/or checked with the California Department of Motor Vehicles to learn the facts surrounding the ownership of the vehicle, it was entirely reasonable, under the circumstances of this case for petitioner's counsel to have relied on the acts and statements of defendants in concluding that he had

---

[6]Panagiotis points out that the notice was generated almost three months before the three-year deadline for serving defendants with process was to run. Knowledge that she had named the wrong defendant was unlikely to have benefited petitioner after dismissal of the Doe defendants.

[7]Defendants propounded interrogatories, requests for admissions and documents, and deposed petitioner.

named the proper parties. Moreover, we are more concerned with balancing the equities than with highlighting the negligence of petitioner's counsel. When all the circumstances are considered, the equities overwhelmingly favor petitioner.

Here, petitioner intended to sue the Budget entity which owned the rented vehicle. The participation of the various Budget entities in settlement negotiations, discovery, and arbitration, the relationship between Budget Westwood's name and the well-known Budget Rent-A-Car enterprise, the substantial identity of the persons involved with Budget Westwood, Budget Santa Monica and Budget Brentwood—these circumstances were sources of excusable mistake on petitioner's part and of awareness on the part of the real tortfeasor. Under the facts of this case, it is difficult to see how Budget Westwood would be harmed if petitioner's motion to amend is granted.

This is a proper case for issuance of a peremptory writ in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].) The matter having been fully briefed, issuance of an alternative writ would add nothing to the exposition of the issues.

Let a peremptory writ of mandate issue directing respondent to set aside its November 26, 1991 order denying petitioner's motion to amend her complaint, and to enter a new and different order granting petitioner's motion to amend.

The temporary stay issued February 3, 1992, is vacated.

Gates, Acting P. J., and Fukuto, J., concurred.